IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GARY WAYNE WILEY II, #281310, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.3:15-cv-0885 |
| | ) | |
| PAMELA MYATT-LEWIS *et al.*, | ) | Judge Nixon |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Gary Wayne Wiley II, a state prisoner in the custody of the Tennessee Department of Correction, has filed a civil rights complaint under 42 U.S.C. § 1983 against various defendants, seeking damages for wrongful imprisonment based on the alleged miscalculation of pretrial jail credits. The complaint (ECF No. 1) is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA").

**I.    Standard of Review**

Under the PLRA, the Court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), or seeks relief from government entities or officials, 28 U.S.C. § 1915A. Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim for which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A. The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim

under [the PLRA] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). In conducting the initial review, the Court must read the plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept the plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

## II.  Factual Allegations

The plaintiff alleges that he pleaded guilty to violation of parole in Case Nos. 2011CR535 ("535"), 2011CR585 ("585"), 2011CR591 ("591"), and 2011CR687 ("687"), for which he had been sentenced to concurrent two-year sentences. He was ordered to serve the remaining term of his concurrent sentences, minus pretrial jail credits. He received pretrial jail credit for serving 236 days. At the same time, he also pleaded guilty in Case No. 2013CR721 ("721"), for which he was ordered to serve a two-year sentence consecutively to the parole-violation sentence(s). The plaintiff insists that he should have received an addition 261 days of pretrial jail credit toward the parole-violation sentence. (*See* ECF No. 1, at 18.) (In the "remedies" section of his complaint, however, he seeks damages for 289 days of wrongful incarceration for. (*See id.* at 8.))[1]

---

[1] The plaintiff attempts to explain how his pretrial jail credits were incorrectly calculated. As best the Court can understand, it appears that he received overlapping but not completely consistent credit for pretrial jail time for the four charges that he was ordered to serve concurrently. The plaintiff's position is that all of his pretrial jail time should be amalgamated and credited toward the total two-year sentence he received on those charges.

More specifically, the original order assessing credits for Case No. 535 acknowledged

The plaintiff explains at great length the efforts to which he has gone to try to get his sentence corrected. The original parole-violation judgment and sentencing orders were entered on February 18, 2014. The plaintiff believed they were incorrect and began writing his public defender and the circuit court clerk to try to correct them. Amended orders were filed on March 20, 2014, but the plaintiff states that these were not correct either. In April 2014, the plaintiff

---

pretrial jail credits for the periods 4/16/12 to 11/09/12 (207 days), 10/29/13 to 11/12/13 (14 days), and 1/14/15 to 1/29/14 (15 days), for total pretrial jail credits of 236 days. (ECF No. 1-1, at 3.) The original order for Case No. 585 awarded pretrial jail credits for the periods 10/16/11 to 11/10/11 (35 days) (not acknowledged with respect to Case No. 535), 10/29/13 to 11/12/13 (14 days), and 1/14/14 to 1/29/14 (15 days), for total pretrial credit of 64 days (ECF No. 1-1, at 5), some of which overlapped with the credits for Case No. 535. The original order for Case No. 591 acknowledged pretrial jail credits for the periods 10/29/13 to 11/12/13 and 1/14/14 to 1/29/14, a total of 29 days (ECF No. 1-1, at 7), all of which overlapped with the credits for Case Nos. 535 and 585. The original order for Case No. 687 granted pretrial jail credits for the periods 12/7/11 to 2/15/12 (70 days) (not acknowledged with respect to the other three cases), 10/29/13 to 11/12/13, and 1/14/14 to 1/29/14 (together, 29 days), for a total of 99 days. (ECF No. 1-1, at 9.)

The amended order for Case No. 535, entered on 1/29/14, credited 289 days of pretrial jail credit, instead of 236 days, a difference of 53 days, but the order does not explain or show how it reached that total, because the order did not amend the time periods for which pretrial jail credit was granted. (ECF No. 1-1, at 12.) The amended orders for Case Nos. 585, 581, and 687 likewise were each amended to add 53 days to the total amount of pretrial jail credit, but the dates of pretrial jail time were not changed. (*See* ECF No. 1-1, at 14, 16, 18.) The TOMIS reports do not reflect the additional 53 days.

The plaintiff states that he was erroneously only given credit for the 236 days reflected on the first order for Case No. 535, or 158 days fewer than he should have received. He arrives at this number by calculating the aggregate number of days for all periods of time for which he should have received credit in the parole-violation orders: 10/16/11 to 11/10/11 (35 days); 12/7/11 to 2/15/12 (70 days); 4/16/12 to 11/09/12 (207 days); 10/29/13 to 11/12/13 (14 days); and 1/14/15 to 1/29/14 (15 days), or 341 days. To that 341 days, the plaintiff adds the 53 days that were added to the amended parole-violation orders (the provenance of which is entirely unexplained), to arrive at 394 days. (394 – 236 = 158.) The plaintiff further argues that he should receive 8 days of credit a month for behavior credits for every 30 days served, for an additional 50 days, for a total of 208 additional days. He then calculates that, because the original parole-violations orders were short 53 days, that means that the calculation of "street days" served, that is, the number of days he was out on probation, erroneously includes 53 days of time when he was in jail and not on the street. Thus, he insists, the 409 days of street time reflected on his TOMIS report should be corrected to 357 days, and that 53 days should be added (again) to his jail credits. Thus, the plaintiff insists that he should have received an additional 261 (208 + 53) days of pretrial jail credit toward the parole-violation sentence(s). (*See* ECF No. 1, at 18.)

received his first TOMIS report from Sentence Management Services. The report's calculation of his sentence was incorrect, so the plaintiff wrote to his public defender and Sentence Management Services. He has been told by Sentence Management Services that it never received the amended orders (which, though incorrect, were still more favorable to the plaintiff than the original orders). The plaintiff has continued to write letters and file motions in his criminal case in the state court, including a motion to suspend sentence and a motion for jail credits, since that time. The plaintiff states that the TOMIS report reflects that his parole-violation sentence expired on January 16, 2015; he insists that this date is incorrect and that his sentence should actually have expired at least 261 days sooner. (*See* Note 1, *supra*.) As a result, the incorrect calculation delayed the start of service of the two-year sentence for Case No. 721.

The TOMIS reports appear to reflect that the plaintiff received no pretrial jail credit for Case No. 535, 40 days for 585, no time for 591, and 70 days for 687, for a total of 110 days. (ECF No. 1-1, at 63–64.)

**III.    Discussion**

Section 1983 provides a private cause of action against state officials acting "under color of state law" who deprive individuals of "a right secured by the Federal Constitution or laws of the United States." 42 U.S.C. § 1983. Clearly, prison administrators acted "under color of state law" when they calculated the plaintiff's pretrial jail credits and other applicable credits. Moreover, the Supreme Court has recognized that prisoners have a liberty interest in the correct application of jail credits to their sentences. *See Sandin v. Conner*, 515 U.S. 472, 487 (1995) (recognizing a liberty interest "where the State's action will inevitably affect the duration of [the prisoner's] sentence").

The United States Supreme Court has also held, however, that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see also Wolff v. McDonnell*, 418 U.S. 539, 554 (1974); *Heck v. Humphrey*, 512 U.S. 477, 481 (1994); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Instead, "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck*, 512 U.S. at 481 (citing *Preiser*, 411 U.S. at 488–90). Consequently, a § 1983 action is barred when a state prisoner challenges the fact or duration of his confinement and seeks either "immediate release from prison" or the "shortening" of his term of confinement. *Wilkinson*, 544 U.S. at 79 (quoting *Preiser*, 411 U.S. at 482).

Moreover, regardless of the type of relief actually sought, if the application of sentence credits would *necessarily* result in the prisoner's "immediate release from physical custody" or "in shortening the length of [his] actual confinement in prison, habeas corpus [is] [the] appropriate remedy." *Preiser*, 411 U.S. at 477. In *Preiser*, three prisoners argued that the correction facility unconstitutionally deprived them of good-time credits without due process of law. Restoration of the credits would have entitled each of the three prisoners to immediate release on parole. The Court held that the prisoners could only proceed under the habeas statute, because the prisoners' grievance was that they were being "unlawfully subjected to physical restraint." *Id.* at 486–87. Such a claim fell "squarely within [the] traditional scope of habeas corpus" and was therefore not cognizable as a civil-rights claim under § 1983. Likewise, in *Edwards v. Balisok*, the plaintiff sought "a declaration that the procedures employed by state officials [to deprive him of good-time credits] violated due process, . . . damages for use of the unconstitutional procedures, [and] an injunction to prevent future violations." *Balisok*, 520 U.S.

at 643. Applying *Heck*, the Court found that the plaintiff could only seek relief through habeas corpus, even though the plaintiff sought declaratory relief and money damages, because the "principal procedural defect complained of," namely, deceit and bias on the part of the decisionmaker, "would, if established, necessarily imply the invalidity of the deprivation of [Balisok's] good-time credits." *Id.* at 646. That is, success on the plaintiff's claim for money damages (and the accompanying claim for declaratory relief) would "necessarily imply the invalidity of the punishment imposed." *Id.* at 648.

By contrast, in *Wilkinson v. Dotson*, a prisoner brought suit against prison administrators arguing that the retroactive application of harsher guidelines to his pre-guidelines case violated the Constitution's Ex Post Facto and Due Process Clauses. *Dotson*, 544 U.S. at 77. As relief, *Dotson* sought "an immediate parole hearing in accordance with the statutory laws and administrative rules in place when [he] committed his crimes." *Id.* The Court found that relief was appropriate under § 1983 rather than under the habeas statute, explaining that "[s]uccess for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed consideration of a new parole application." *Id.* at 82.

As the Court further explained in *Dotson*:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks—not where it simply "relates to"— "core" habeas corpus relief, *i.e.*, where a state prisoner requests present or future release. *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner. *Heck* specifies that a prisoner cannot use § 1983 to obtain

> damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok*, like *Wolff*, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—*no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration.*

*Dotson*, 544 U.S. at 81–82 (internal citation omitted; emphasis added).

Applying these principles to the present case, the Court finds that the plaintiff must seek relief through habeas corpus, despite the fact that he seeks only "punitive and monetary damages." The claim for damages is premised upon the assumption that the plaintiff was already held 261 (or 289) days longer than he should have been on his parole-violation sentence.[2] However, the plaintiff remains in custody serving a consecutive sentence, and success on his claim for damages based on a corrected calculation of pretrial jail credits would necessarily "imply the unlawfulness of the State's custody," *Dotson*, 544 U.S. at 81, require a recalculation of his release eligibility date, and shorten his total sentence by a specific number of days. The Court therefore finds, despite the plaintiff's claim for damages only, that relief in this case must be sought under the habeas corpus statutes.

In addition, although the plaintiff claims that he has exhausted his state remedies by submitting prison/jail grievances, writing letters, and filing motions in the state criminal court, these actions do not comply with the procedure prescribed by Tennessee law and will not satisfy the habeas statute's exhaustion requirement. Under Tennessee law, "a trial court's authority regarding sentencing credits ends once the inmate enters the Department [of Correction]."

---

[2] The plaintiff's claim for an additional 158 days of pretrial jail credit, at least, appears not to be entirely frivolous. *See* Note 1, *supra*.

*Roberts v. Campbell*, No. 03C01-9803-CC–00124, 1999 WL 281084 (Tenn. Ct. Crim. App. April 30, 1999) (citation omitted); *see also* Tenn. Code Ann. § 40-35-501(q) ("Notwithstanding any other provision of the law to the contrary, the department [of correction] is responsible for calculating the sentence expiration date and the release eligibility dates of any felony offender sentenced to the department and any felony offender sentenced to confinement in a local jail or workhouse for one (1) or more years.").

The Tennessee Supreme Court recently confirmed this principle and clarified the procedure an inmate must follow to challenge TDOC's calculation of his release eligibility date:

> We clarify that the Uniform Administrative Procedures Act ("UAPA") governs an inmate's challenge to the Tennessee Department of Correction's ("TDOC") calculation of a release eligibility date. *See* Tenn. Code Ann. §§ 4-5-101 to -325 (2011). Under the UAPA, an inmate must request a declaratory order from TDOC before filing a declaratory action in court. Tenn. Code Ann. § 4-5-225(b).

*Stewart v. Schofield*, 368 S.W.3d 457, 459 (Tenn.2012); *see also id.* at 464 ("An inmate dissatisfied with TDOC's calculation of a release eligibility date may challenge the calculation, but the challenge must comply with the procedures of the UAPA." (citations omitted)). The court clearly outlined the necessary procedure:

> Under the UAPA, an inmate must first petition TDOC for a declaratory order. Tenn. Code Ann. § 4-5-223(a) ("Any affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency."). Upon receipt of the petition, TDOC must either convene a contested case hearing and issue a declaratory order or refuse to issue a declaratory order. See Tenn. Code Ann. § 4-5-223(a)(1)–(2). An inmate aggrieved by a final decision in a contested case may obtain judicial review under the UAPA. Tenn. Code Ann. §§ 4-5-223(a)(1), -322.
>
> If TDOC chooses not to convene a contested case hearing or refuses to issue a declaratory order, FN17 an inmate may obtain judicial review by seeking a declaratory judgment in the Chancery Court of Davidson County. Tenn. Code Ann. §§ 4-5-223(a)(2), -225(a). The UAPA does not permit an inmate to seek a declaratory judgment in the Chancery Court, however, unless the inmate has first petitioned TDOC for a declaratory order and been refused. Tenn. Code Ann. § 4-

5-225(b). In the absence of proof the inmate sought a declaratory order from TDOC, the Chancery Court lacks jurisdiction over an inmate's declaratory judgment action.

> FN17. If an inmate petitions TDOC for a declaratory order, but TDOC fails to set the petition for a contested case hearing within sixty days after receiving it, TDOC "shall be deemed to have denied the petition and to have refused to issue a declaratory order." Tenn. Code Ann. § 4-5-223(c).

*Id.* at 464–65 (some internal citations omitted).[3]

In sum, to recover damages for the allegedly unlawful imprisonment, the plaintiff "must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying . . . sentence." *Muhammed v. Close*, 540 U.S. 749, 751 (2004).

## IV. CONCLUSION

For the reasons set forth herein, this action will be dismissed without prejudice. An appropriate order is filed herewith.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[3] Alternatively, if a Tennessee state prisoner believes that the term of his sentence has expired, he also has the ability under Tennessee law to seek a writ of habeas corpus under state law, Tenn. Code Ann. § 29-21-101. The petitioner did not pursue this avenue either, but the state writ may be available—

> only when it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired.

*State v. Ritchie*, 20 S.W.3d 624, 630 (Tenn. 2000) (internal quotation marks and citation omitted).